**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Joshua John Poitra, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER GRANTING MOTION** |
| | ) | **TO DISMISS § 2254 PETITION** |
| vs. | ) | |
| | ) | |
| State of North Dakota, | ) | |
| | ) | Case No. 1:13-cv-096 |
| Respondent. | ) | |

Petitioner Joshua John Poitra is an inmate at the North Dakota State Penitentiary ("NDSP") in Bismarck, North Dakota. He has filed a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody." The State of North Dakota ("State") has filed a "Motion to Dismiss Section 2254 Petition." The parties have consented to the exercise of jurisdiction by the undersigned. For the reasons set forth below, the State's motion to dismiss is granted, and Poitra's habeas petition is dismissed with prejudice.

## I.    BACKGROUND

In July 2009, Poitra was convicted by a jury in state court in Cass County, North Dakota of one count of gross sexual imposition and one count of aggravated assault. (Doc. No. 8, Exs. 12; 16, ¶ 11). On October 26, 2009, he was sentenced to 25 years imprisonment with 5 years suspended on the gross sexual imposition conviction and 5 years imprisonment on the aggravated assault conviction, with the sentences to run concurrent. (Doc. No. 8, Ex. 12). He appealed to the North Dakota Supreme Court. (Doc. No. 8, Ex. 13). On July 13, 2010, the North Dakota Supreme Court issued a decision affirming the criminal judgment. (Doc. No. 8, Ex. 16); State v. Poitra, 2010 ND 137, 785 N.W.2d 225. Poitra did not file a petition for a writ of certiorari in the United States Supreme Court.

On August 11, 2011, Poitra filed a *pro se* application for postconviction relief in the state district court. (Doc. No. 8, Exs. 17-18). On September 6, 2011, attorney Daniel Gast was appointed to represent Poitra in that proceeding. (Doc. No. 8, Exs. 17; 22, p. 5). On May 25, 2012, the district court issued an order denying the application. (Doc. No. 8, Ex. 22). On June 29, 2012, Poitra filed a notice of appeal to the North Dakota Supreme Court. (Doc. No. 8, Ex. 17). On August 6, 2012, Gast was appointed to represent Poitra on his state postconviction appeal. (Id.). On January 23, 2013, the North Dakota Supreme Court issued a decision summarily affirming the denial of Poitra's application for postconviction relief. (Doc. No. 8, Ex. 28); Poitra v. State, 2013 ND 5, 828 N.W.2d 546 (per curiam). On February 25, 2013, the Court issued its mandate. (Doc. No. 8, Ex. 25).

On August 12, 2013, Poitra placed his federal habeas petition in the prison mailing system. (Doc. No. 2, p.14). The State has filed a motion to dismiss the petition on the grounds that Poitra's claims are time-barred and that, in any event, they have either been procedurally defaulted or are without merit.

## II.   WHETHER POITRA'S PETITION IS TIME-BARRED

### A.   Poitra failed to file his petition with the one-year limitations period

#### 1.   AEDPA's statute of limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the one-year statute of limitations at 28 U.S.C. § 2244(d)(1) applies to a state prisoner's application for federal habeas corpus relief. Johnson v. Hobbs, 678 F.3d 607, 610 (8th Cir. 2012). In this case, pursuant to § 2244(d)(1)(A), the one-year period began to run on "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" See, e.g., Johnson, 678 F.3d at 610. "Review of a state criminal conviction by the

United States Supreme Court is considered direct review of the conviction." <u>King v. Hobbs</u>, 666 F.3d 1132, 1135 (8th Cir. 2012) (quoting <u>Smith v. Bowersox</u>, 159 F.3d 345, 347 (8th Cir. 1998)). When the United States Supreme Court has jurisdiction to review the state court judgment and the petitioner does not seek such review, the state court judgment becomes final when the petitioner's time for requesting a writ of certiorari expires. <u>Gonzalez v. Thaler</u>, 132 S. Ct. 641, 653-54 (2012).

Section 2244(d)(2) provides for the tolling of the one-year statutory period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" <u>See</u>, <u>e.g.</u>, <u>Johnson</u>, 678 F.3d at 610. The time between the conclusion of direct review of the state court judgment and the filing of an application for state post-conviction relief counts against the one-year period. <u>Painter v. Iowa</u>, 247 F.3d 1255, 1256 (8th Cir. 2001). "A state postconviction action 'remains pending' for the purpose of federal tolling 'until the application has achieved final resolution through the State's postconviction procedures.'" <u>Steen v. Schuetzle</u>, 326 Fed. Appx. 972, 973 (8th Cir. 2009) (quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 220 (2002)). A postconviction proceeding appealed to the North Dakota Supreme Court remains pending until the Court issues its mandate. <u>Steen</u>, 326 Fed. Appx. at 974 (citing <u>Finch v. Backes</u>, 491 N.W.2d 705, 707 (N.D. 1992); N.D.C.C. § 28-05-10).

A *pro se* prisoner's habeas petition is deemed filed on the date it is delivered to prison officials for mailing to the clerk of court. <u>Nichols v. Bowersox</u>, 172 F.3d 1068, 1077 (8th Cir. 1999), <u>abrogated on other grounds by</u> <u>Riddle v. Kemna</u>, 523 F.3d 850 (8th Cir. 2008). Fed. R. Civ. P. 6(a) generally governs the calculation of AEDPA time limits. <u>Wright v. Norris</u>, 299 F.3d 926, 927 n.2 (8th Cir. 2002).

## 2.     The one-year limitations period expired before Poitra filed his petition

Poitra's conviction was affirmed by the North Dakota court of last resort, and he did not file a petition for a writ of certiorari with the United States Supreme Court. Accordingly, his one-year period for filing a § 2254 petition began to run when his time for seeking review by the United States Supreme Court expired. Supreme Court Rule 13.1 provides that a petition for a writ of certiorari is timely when it is filed within 90 days of entry of the judgment by the state court of last resort. That time period does not include the day of the filing of the judgment. <u>See</u> Supreme Court Rule 30. It does include the last day of the period unless it is a Saturday, Sunday, or federal legal holiday, in which case the time period is extended to the next business day. <u>Id.</u>

The North Dakota Supreme Court's judgment affirming Poitra's criminal conviction was entered no later than July 15, 2010. From that date, Poitra's time for filing for certiorari expired on October 13, 2010, and his one-year period for filing a § 2254 petition began to run on or about that date.[1] Poitra's time for filing a § 2254 petition then ran for 303 days until it was tolled on August 11, 2011, by the filing in state district court of his application for postconviction relief. (Doc. No. 8, Exs. 17-18). The statutory period remained tolled until the North Dakota Supreme Court issued its mandate on February 25, 2013. (Doc. No. 8, Ex. 25). The sixty-two days remaining for Poitra to file his § 2254 petition would have expired on or about April 28, 2013, more than three months

---

[1] The State asserts that Poitra's time for filing for certiorari began to run on July 13, 2010 and expired, thereby triggering the running of the one-year period, on October 11, 2010. (Doc. No. 11, pp. 3-4) The North Dakota Supreme Court issued its decision affirming Poitra's conviction on July 13, 2010. However, it is not clear from the record that the North Dakota Supreme Court's judgment was issued on the same date as its decision. The judgment is not included in the state court records submitted by the State. The register of docket entries for Poitra's direct appeal lists July 13, 2010 as the date the opinion was issued and July 15, 2010 as the date the judgment was emailed to the parties. (Doc. No. 8, Ex. 13, p. 3). Further, even if the North Dakota Supreme Court's judgment was entered on July 13, 2010, Poitra's time for filing for certiorari would not have expired until October 12, 2010, because October 11, 2010 was Columbus Day, a federal holiday. <u>See</u> 5 U.S.C. § 6103.

before his habeas petition was placed in the prison mailing system on August 12, 2013.

**B.      Equitable tolling**

### 1.      Law governing equitable tolling

The one-year AEDPA limitations period is subject to equitable tolling in a very narrow range of cases.  Holland v. Florida, 560 U.S. 631, 645 (2010) ("Holland"); Deroo v. United States, 709 F.3d 1242, 1246 (8th Cir. 2013).  A petitioner claiming equitable tolling must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Holland, 560 U.S. at 653 (internal quotations and citations omitted).  What may qualify as an "extraordinary circumstance" is discussed in more detail later.  In short, however, when what is claimed is negligence or even gross negligence of counsel, it probably must amount to counsel having effectively abandoned the client to be an "extraordinary circumstance."

### 2.      Factual information proffered by Poitra

To  justify his late submission, Poitra asserts in his petition:

> Although North Dakota Supreme Court affirmed my conviction January 23, 2013, I was not made aware of the honorable court's ruling until [July 1, 2013] when I'd [R]epeatedly written this Court Clerk's Office requesting the status of my appeal.
>
> North Dakota law stipulates that the courts do [n]ot send copies of correspondence or documents to a defendant, but that said must be sent directly to an attorney of record. The problem being that the law firm handling my appeal no longer employed my attorney of record. Thus my repeated attempts at receiving notification of the status of my appeal, were [n]ot answered until July 1, 2013, when the Clerk's Office of the North Dakota Supreme Court notified me themselves.

(Doc. No. 2, p.13) (brackets and errors in original; citations to Exhibits omitted).  Poitra also submits

a number of letters to support his argument.

One is a letter written by Poitra to the Clerk of the North Dakota Supreme Court dated

August 10, 2012, which reads:

> Appellant Joshua Poitra, pro-se respectfully requests the Honorable Court for an extension of time to file and do his appeal brief. As I am still waiting for a response back from the District Court concerning the application to appoint an attorney to me for my appeal to you the Supreme Court. I don't know what to do and sure could use the help from a public defender with my issues regarding the appeal brief and appendix.

> Wherefore, Joshua Poitra pro-se to Case No. 20120283 respectfully asks this court to grant the extension of time so that he can produce or do the appeal brief with you the Supreme Court.

> dated this 10 day of August, 2012.

> /s/
> Joshua Poitra; pro-se
> Box 5521
> Bismarck, N.D. 58506

(Doc. No. 22-1, p. 2). Another is the response by the Clerk of North Dakota Supreme Court dated

August 13, 2012, addressed to both Poitra and Gast, which states:

> We recently received notice of Mr. Gast's appointment as counsel for Mr. Poitra in this matter. It appears the appointment was made August 6.

> I note that the Appellant's Brief and Appendix are due September 2, 2012. I further note that today Mr. Poitra requested an extension of time to file the brief in this matter because he is waiting for notification of the appointment of counsel from the district court. In light of the fact that Mr. Gast has been counsel of record in this matter since August 6, and we generally do not accept filings from represented individuals, no action is being taken on Mr. Poitra's request. If Mr. Gast needs additional time for brief preparation, he will need to be [sic] make such a motion to this Court.

> Sincerely yours,

> /s/
> Penny Miller
> Clerk
> North Dakota Supreme Court

(Doc. No. 22-1, p. 4).

The next was a letter written by Poitra to the Clerk of North Dakota Supreme Court and attorney Gast dated September 7, 2012, stating:

> To whom it may concern:
>
> I don't know what's going on?  My appeal brief in the above matter was due by September 2nd 2012 and neither of you the Supreme Court and or you my court appointed attorney have not sent me anything so far.  I will note that I did put in a motion for an extension of time with you the Supreme Court but my request was turned down.  And instead I was told that my appellant attorney was going to be the same individual who did my post-conviction for me with the District Court that got denied anyways.  Why?
>
> My above named public defender is clearly ineffective on my behalf because he was not informed me with any kind of issues and or without any kind of ideas as to what we are going to address and bring before the Supreme Court.  As a matter of fact when I did call his office last week for the first time, I was told by his clerk that they had no knowledge that he had been appointed as my attorney for my appeal.  What's going on?
>
> Well I'm asking for a continuance or something because this just isn't fair that something like this can be happening within my appeal process.  I have never heard anything from my attorney yet and maybe he just doesn't care either way but I do know that I do have rights for an honest representation.  Please let me know what's going on and or if my appeal is still okay.
>
> Thank you.

(Doc. No. 2-3, p. 4) (errors in original).  This letter was followed by a reply by the Clerk of the North Dakota Supreme Court to both Poitra and Gast dated September 12, 2012, which reads:

> Mr. Poitra recently made an inquiry into the status of his appeal.  This is to advise him, that at Mr. Gast's request the due date for the Appellant's brief and appendix was extended to October 4, 2012.
>
> I must reiterate to Mr. Poitra that when there is an attorney of record we do not send copies of correspondence or documents during the pendency of an appeal to the represented party, nor we will [sic] interject ourselves into the attorney-client relationship.  It is best that Mr. Poitra address his concerns in a letter sent to Mr. Gast, as this Court does not appoint the attorneys.
>
> Sincerely yours,
>
> /s/
> Penny Miller
> Clerk
> North Dakota Supreme Court

(Doc. No. 2-3, p. 2).

Poitra also submits two letters addressed to him that presumably are responses to his requests for information about his appeal.  One is a letter dated July 1, 2013, from the District Court for the East Central Judicial District in Fargo, North Dakota that reads:

> Dear Mr. Poitra,
>
> The Court is in receipt of your letter.  The North Dakota Supreme Court has ruled on your appeal.  The Supreme Court Opinion and Judgment have been attached.
>
> Sincerely,
> */s/*
> Jeffrey Gunkelman
> Law Clerk
> East Central Judicial District Court

(Doc. No. 2-2, p. 2).  The other is an undated letter from Attorney Ross Brandborg of Brandborg Law that provides:

> I received your letter of June 6.  Unfortunately neither Mr. Gast nor Mr. Fisher are working here anymore.  I will inquire about the status of your case but will not take any further action.
>
> Sincerely,
> */s/*
> Ross Brandborg
> Attorney at Law

(Doc. No. 2-3, p. 3).

While Poitra does not use the term "equitable tolling," it is one of the arguments that exists for the reasons that he gives for why his petition was untimely.

### 3.    Whether an "extraordinary circumstance" stood in Poitra's way and prevented timely filing

The circumstances under which attorney misconduct may amount to an extraordinary circumstance sufficient to support an equitable tolling claim were recently discussed in the United States Supreme Court's decisions in <u>Holland v. Florida</u>, 560 U.S. 631 (2010) and <u>Maples v. Thomas</u>,

132 S. Ct. 912 (2012). In <u>Holland</u>, the Court rejected as "too rigid" the Eleventh Circuit's rule that attorney misconduct could amount to an extraordinary circumstance only in cases of "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." 560 U.S. at 649 (quotation omitted). Rather, the Court directed lower courts to "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." <u>Id.</u> at 650. The court stated while "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling[,]" <u>Id.</u> at 651-52 (internal quotations and citations omitted), extraordinary circumstances may exist in "far more serious instances of attorney misconduct" not limited to those contemplated by the Eleventh Circuit. <u>Id.</u> at 652.

In his concurring opinion, Justice Alito criticized the majority for failing to provide sufficient guidance and outlined what he believed to be the governing principles for cases where an attorney's conduct caused a petitioner to miss a filing deadline. <u>Id.</u> at 655 (Alito, J., concurring). He explained that the rationale for holding that attorney negligence is not an extraordinary circumstance is "that the mistakes of counsel are constructively attributable to the client, at least in the postconviction context" and that "[t]hat rationale plainly applies regardless whether the attorney error in question involves ordinary or gross negligence." <u>Id.</u> at 656-57. However, Justice Alito explained that attorney misconduct could amount to an extraordinary circumstance in cases where an attorney's conduct was not constructively attributable to the petitioner because "his attorney essentially 'abandoned' him[.]" <u>Id.</u> at 659.

The majority discussed Justice Alito's concurrence in the Court's subsequent decision in <u>Maples v. Thomas</u>, 132 S. Ct. 912 (2012). At issue in <u>Maples</u> was whether petitioner Cory Maples

had demonstrated cause adequate to excuse his procedural default in state court.  Id. at 922.  In discussing whether Maples made the required showing that "something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule," Id. at 922 (internal quotation, emphasis, and alterations omitted), the Court stated:

> Our recent decision in Holland v. Florida, 560 U.S. [631], 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), is instructive. . . .
>
> On the . . . issue [of whether an attorney's unprofessional conduct can ever count as an "extraordinary circumstance" justifying equitable tolling], the Court recognized that an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit. Id., at [651-52], 130 S.Ct., at 2564; id., at [657-58], 130 S.Ct., at 2567-2568 (ALITO, J., concurring in part and concurring in judgment); see Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007).  The Holland petitioner, however, urged that attorney negligence was not the gravamen of his complaint.  Rather, he asserted that his lawyer had detached himself from any trust relationship with his client: "[My lawyer] has abandoned me," the petitioner complained to the court. 560 U.S., at [637], 130 S.Ct., at 2555 (brackets and internal quotation marks omitted); see Nara v. Frank, 264 F.3d 310, 320 (C.A.3 2001) (ordering a hearing on whether a client's effective abandonment by his lawyer merited tolling of the one-year deadline for filing a federal habeas petition).
>
> In a concurring opinion in Holland, Justice ALITO homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client.  560 U.S., at [657-59], 130 S.Ct., at 2567-2568.  Holland's plea fit the latter category: He alleged abandonment "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." Id., at [659], 130 S.Ct., at 2568; see id., at [636-38, 652-53], 130 S.Ct., at 2555-2556, 2564-2565 (majority opinion).  If true, Justice ALITO explained, "petitioner's allegations would suffice to establish extraordinary circumstances beyond his control[:] Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." Id., at [659], 130 S.Ct., at 2568.
>
> We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him.  Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.  We therefore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the "extraordinary circumstances beyond his control," ibid., necessary to lift the state procedural bar to his federal petition.

132 S. Ct. at 923-24 (pinpoint pages in brackets added, footnote omitted).

Following Maples, at least two circuit courts of appeals have concluded that for attorney

negligence to amount to an extraordinary circumstance, the attorney must have effectively abandoned the attorney-client relationship. See Cadet v. Florida Dep't of Corr., 742 F.3d 473, 481 (11th Cir. 2014) ("In light of the Supreme Court's Maples decision, we hold that attorney negligence, however gross or egregious, does not qualify as an 'extraordinary circumstance' for purposes of equitable tolling; abandonment of the attorney-client relationship, such as may have occurred in Holland, is required."); Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012) ("[I]n order to rise to the level necessary to constitute an 'extraordinary circumstance,' for purposes of tolling § 2254's limitation period, attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship.").

The State contends that Poitra is not entitled to equitable tolling because any failure on the part of his attorney to notify him of the North Dakota Supreme Court's decision affirming the denial of his petition for postconviction relief would been at most negligence or possibly gross negligence. There is case law that supports this argument, *i.e.*, a failure on the part of counsel to provide notice of a court decision that impacts the calculation of AEDPA's limitations period is not an "extraordinary circumstance." See, e.g., LaCava v. Kyler, 398 F.3d 271, 276 (3d Cir. 2005) ( failure to give notice was attorney error and not enough to constitute an extraordinary circumstance because it involved no affirmative misrepresentation or other like conduct); Salinas v. Dretke, 354 F.3d 425, 431-32 (5th Cir. 2004) overruled on other grounds by Jimenez v. Quarterman, 555 U.S. 113 (2009) (same); Hunter v. United States, No. 3:10-cv-343, 2013 WL 4780918, at * 4 (E.D. Tenn. Sept. 5, 2013) (counsel's failure to inform § 2255 petitioner that United States Supreme Court had denied certiorari was garden variety excusable neglect that did not constitute an extraordinary circumstance); Turner v. Ellington, No. 1:10-cv-0446, 2013 WL 6596949, at *3 (M.D. Ala. Dec. 13,

2013) ("[Petitioner's] lawyer's negligence in failing to notify [petitioner] that her conviction was affirmed on direct appeal is certainly not laudable, but it is not the kind of mistake which equates to abandonment or otherwise rises to the level of extraordinary circumstances sufficient to toll the statute of limitations."); Banks v. Walker, No. 2:07-cv-02022, 2010 WL 5200920, at *1 (E.D. Cal. Dec. 15, 2010) (state postconviction counsel's failure to notify petitioner of state supreme court's denial of petition for collateral review until after deadline for filing federal habeas petition had passed was simple attorney negligence which was not an extraordinary circumstance).

However, most of these cases may be distinguishable either because they did not involve a fact pattern that gave rise to an argument for attorney abandonment or they applied the higher standard for attorney misconduct rejected in Holland. Notably, in 2008 and consistent with the foregoing cases, the Eleventh Circuit held in Melson v. Allen, 548 F.3d 993, 997-1001 (11th Cir. 2008), that allegations that a petitioner's attorney did not tell him his initial petition for state postconviction relief had been dismissed, that his attorney had missed deadlines and did not adequately communicate with him about the status of the case, and that his attorney had failed to file a timely notice of appeal from the denial of his petition for post-conviction relief did not rise to the level of egregious attorney misconduct warranting equitable tolling. The Supreme Court, however, vacated the Eleventh Circuit's decision and remanded the case for reconsideration in light of Holland. Melson v. Allen, 561 U.S. 1001 (2010).[2]

In this case, Poitra alleges more than that his attorney failed to notify him of the North Dakota Supreme Court's decision. Essentially, he claims that the reason he did not get notice was

---

[2] Following a remand by the Eleventh Circuit to the district court and another appeal, the case was disposed of on grounds of "lack of diligence." Melson v. Commissioner, Alabama Dep't of Corrections, 713 F.3d 1086, 1089-90 (11th Cir. 2013).

that his attorney had abandoned him by the time the decision came down. And, while the court is skeptical about these allegations, Poitra has submitted just enough to create fact issues with respect to whether he failed to receive timely notice and, more importantly, whether the reason for the untimely notice was abandonment by his attorney.

### 4. Whether Poitra was diligent

#### a. Introduction

For purposes of determining whether Poitra acted with the requisite diligence, the court will consider the following periods during which his AEDPA limitations time was either running or had expired:

1. The time from when his AEDPA clock started to run on or about October 13, 2010, (the deadline for filing a petition for a writ of certiorari to the United States Supreme Court following the denial of Poitra's direct appeal) to the time of the filing of his petition for postconviction relief in state district court on August 11, 2011. The court has estimated this was approximately 303 days.

2. The time from February 25, 2013, which was when the North Dakota Supreme Court issued its mandate affirming the denial of Poitra's petition for postconviction relief, to when Poitra claims he first learned of the court's decision. In his petition, Poitra claims he first learned of the decision by a letter from the state district court dated July 1, 2013, in response to his inquiry about the status of his case. Included within this time frame was the running of the final 62 days, or so, remaining on the time for Poitra to file his § 2254 petition, which occurred on or about April 29, 2013, more than three months before his habeas petition was placed in the prison mailing system

on August 12, 2013.

3.    The time period from when Poitra received the July 1, 2013 letter to the time he

placed his habeas petition in the prison mailing system on August 12, 2013.  Poitra

appears to state at one point in his petition that he learned of the North Dakota

Supreme Court's decision on July 1, 2013, pointing to the district court's letter of

that date.  However, it is not entirely clear whether he really means he learned of the

decision on the same day the letter was dated or simply that it was that letter which

informed him of the decision and the actual receipt came later.

Unless the state district court letter was faxed or emailed to him (and there

is no evidence that it was), it seems improbable that he would have received the letter

the same day it was dated given that the letter was sent by the state district court in

Fargo, North Dakota to Poitra's place of incarceration at the NDSP in Bismarck.

The court is well aware that the mail time between the two cities is one to two days

under the best of circumstances.  Also, there are other factors that may have had a

bearing on when the letter was actually received, including any time the letter may

have spent  in the screening of incoming mail at the NDSP before being delivered to

Poitra, whether NDSP mail personnel worked weekends, and the possibility the

process may have been delayed more than normal by the intervening Fourth of July

holiday.  Given these possibilities a delay of a week would not be surprising.[3]

In short, if Poitra learned of the July 1, 2013 letter on the day it was dated,

then time to when he placed his *pro se* § 2254 petition in the prison mail would have

---

[3]  As noted later, Poitra sent a letter to the state district court dated June 24, 2013, which was not docketed until
July 1, 2013.

been approximately 42 days. However, if there was a delay, the time could very well have been 35 days or less.

**b.    The time period from when the AEDPA clock started running to Poitra's filing of his state petition for postconviction relief**

As indicated above, approximately 303 days (roughly ten months) ran off the AEDPA clock before Poitra filed his state petition for postconviction relief. If, as in this case, the extraordinary circumstance being claimed has not yet occurred, should this time period be considered in determining whether the petitioner has acted with diligence? To date, the United States Supreme Court has sent conflicting signals.

In <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005) ("<u>Pace</u>"), the United States Supreme Court had to decide whether the time period consumed by an untimely filed state petition for collateral review counted for purposes of determining whether the AEDPA statute of limitations had run. The Court concluded that it did based on the applicable AEDPA provision for excluding time referring only to a "properly filed" application. <u>Id.</u> at 16. After reaching that conclusion, the Court then considered whether the time period could in that case nevertheless be equitably tolled. The Court concluded that it could not because of the petitioner's lack of diligence. The Court pointed to the fact that the petitioner had let years go by without any valid justification before filing his untimely petition for state postconviction relief and then, after that petition had been dismissed, waited five months more before deciding to seek § 2254 relief. <u>Id.</u> at 419.

In <u>Holland</u>, the petitioner was appointed counsel 37 days after his AEDPA clock started to run, but his attorney did not file his state petition for postconviction relief until some 316 days after his appointment, which left only 12 days left on his AEDPA clock. 560 U.S. at 635-36. In deciding that equitable tolling might be available to Holland, including expressing the opinion that the district

15

court was incorrect with respect to Holland's purported lack of diligence, the Court never mentioned time that had run on AEDPA's clock prior to the filing of the petition, which was most of it. Id. at 653. Rather, the Court focused its attention on what Holland had done after the state petition was filed and made reference to Pace only in passing.

The lower federal courts appear to be in disagreement with respect to whether the time period prior to the occurrence of the claimed extraordinary circumstance should be counted and, if so, to what extent. Several of the federal circuit courts have stated that it should not. E.g., Harper v. Ercole, 648 F.3d 132, 138-40 (2d Cir. 2011); United States v. Gabaldon, 522 F.3d 1121, 1126 (10th Cir. 2008). For example, in Gabaldon, the Tenth Circuit concluded the district court had erred in holding the petitioner was not diligent because he had waited until late in the filing period to file his petition. Quoting from an earlier decision by the Second Circuit in Valverde v. Stinson, 224 F.3d 129 (2d Cir. 2000), the court stated:

> Importantly, the statute gives a petitioner one year to file. As the Second Circuit stated, a petitioner
>> is not ineligible for equitable tolling simply because he waited until late in the limitations period to file his habeas petition. He would have acted reasonably by filing his petition any time during the applicable one-year period of limitations. Extraordinary circumstances cannot 'prevent' a petitioner from filing on time if, prior to the occurrence of those circumstances, the petitioner has been so neglectful in the preparation of his petition that even in the absence of the extraordinary circumstances, a reasonable person in the petitioner's situation would have been unable to file in the time remaining within the limitations period. A petitioner should not be faulted, however, for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period.
> Valverde, 224 F.3d at 136 (citation omitted).

Gabaldon, 522 F.3d at 1126.

Several of the other federal circuits, however, have considered what occurred prior to the occurrence of the alleged extraordinary circumstance in determining whether the petitioner was diligent. E.g., Melson v. Commissioner Alabama Dep't of Corrections., 713 F.3d at 1089 (Eleventh

Circuit held that a petitioner's failure to make an independent effort to locate postconviction counsel or to file his own habeas petition during the eighth months after his state court judgment became final supported the conclusion that petitioner had failed to exercise reasonable diligence); Stroman v. Thaler, 603 F.3d 299, 302-03 (5th Cir. 2010) (fact that petitioner waited nearly seven months before filing his state habeas petition was adverse to his equitable tolling claim); LaCava v. Kyler, 398 F.3d at 277 (the Third Circuit considered the fact petitioner waited nine months before filing an application for state postconviction relief); cf. Roy v. Lampert, 465 F.3d 964, 972 (9th Cir. 2006) (considering it important that petitioners pursued their claims within a reasonable period of time before the external impediment came into existence).

The parties have not cited to any Eighth Circuit case directly on point. The court notes, however, that the Eighth Circuit in the pre-Holland case of United States v. Martin, pointed to the fact that the petitioner had retained counsel well in advance of the filing deadline for his § 2254 petition as one of the reasons why the petitioner was diligent without addressing whether it was a necessary factor. 408 F.3d 1089, 1095.

Obviously, if Poitra had filed his state petition for postconviction relief much earlier - say within the first two months after his AEDPA clock started ticking, he likely would not be in the position he is today. On the other hand, Poitra was young, was likely unfamiliar with the process as well as the substantive law, and was proceeding *pro se* following the denial of his direct appeal through the time of the filing of his petition for postconviction relief after which counsel was appointed. Included in the decisions that Poitra would have had to make while he was proceeding *pro se* were whether to assert claims of ineffective assistance of counsel against not only his trial counsel, but also his appellate counsel. And, since those claims were not addressed on direct appeal,

this would have been all new. Hence, Poitra would not have been able to rely upon the the work of his prior counsel. Finally, while a substantial amount of time had run on his AEDPA clock, he still had a little over sixty days - more than enough time to prepare and file a petition here if he had been timely notified of the North Dakota Supreme Court's decision affirming the denial of his petition for postconviction relief.

In this case, even if the time period prior to the occurrence of the claimed extraordinary circumstance can be considered, the court is not prepared to conclude now it would necessarily tip the balance in favor of a determination that Poitra failed to exercise reasonable diligence. This is particularly true in light of Holland, not only in terms of the Court's treatment of the facts in that case, but also its more general statements to the effect that application of the doctrine often depends upon the specific facts of the case.

     **c.**     **The time period from when the North Dakota Supreme Court's decision on postconviction appeal became final to when Poitra claims he first became aware of the decision**

The second time period that the court considers in its analysis is from when his state postconviction appeal became final to when he claims he first became aware of the North Dakota Supreme Court's decision based on the letter from the state district court dated July 1, 2013. Relevant to whether Poitra acted with reasonable diligence here, as opposed to maximum feasible diligence, is the fact that he had twice earlier written to the North Dakota Supreme Court and was told that documents and correspondence would not be sent to him, only to his attorney, and which he may have reasonably read to implicitly suggest "don't bother us if you have an attorney." Thereafter, while the record is sparse, a fair inference is that Poitra became aware that the briefing process before the North Dakota Supreme Court began in October 2012. And, from his prior

experience on direct appeal, Poitra would also have been aware that it would take some time for the briefing to become completed, for the matter thereafter to be formally presented to the court (including the possibility of an argument), and for a decision to be made. While the record here does not contain a copy of the letter that Poitra sent to the clerk of the district court inquiring about the status of his case, the state court docket sheet indicates the letter was dated June 24, 2013, and was received by the state district court on July 1, 2013. (Doc. No. 8, Ex. 17).

Considering these time frames, the court is not prepared to conclude now that it would have been unreasonable for a prisoner in Poitra's situation to believe that the process from briefing to a final decision could take up to eight months. Or, to state it differently, that relying upon counsel to provide notice of the North Dakota Supreme Court's decision during the time from when the decision was rendered on January 23, 2013, to when Poitra sent his letter to the state district court, a period of approximately five months (or approximately four months from the date of the court's mandate), may very well have been sufficient diligence. In fact, there is case law that suggests it would. See, e.g., Hardy v. Quarterman, 577 F.3d 596, 599 (5th Cir. 2009) (eleventh-month wait did not exhibit lack of diligence); Diaz v. Kelly, 515 F.3d 149, 155 (2d Cir. 2008) (nine-month wait was not lack of diligence); Miller v. Collins, 305 F.3d 491, 495-96 (6th Cir. 2002) (same); cf. Baker v. Cain, No. 06-31177, 2008 WL 3243993, at *3 (5th Cir. Aug. 7, 2008) (unpublished per curiam) (refusing to decide whether a twenty month delay in inquiring into the status of the state trial court's decision on postconviction relief exhibited lack of diligence and noting that it presented a thorny issue because of examples presented to the court where Louisiana district courts had deliberated for that length or longer before ruling on postconviction relief). As discussed by the Second Circuit in Diaz v. Kelly:

The State does contend that Taylor cannot have the benefit of equitable tolling for lack of due diligence on his part. We disagree. Taylor made inquiry to the Appellate Division on December 15, 2000, which was nine months after he had sought leave to appeal the March 3, 2000, denial of his section 440.10 motion. As the Sixth Circuit has noted, "From a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion." Miller, 305 F.3d at 496. We see no point in obliging a *pro se* litigant to pester a state court with frequent inquiries as to whether a pending motion has been decided, at least until a substantial period of time has elapsed. Taylor made his inquiry to the Appellate Division slightly more than three months after the end of the limitations period. See Miller, 305 F.3d at 496 (five and one-half month interval between limitations period and discovery of state court ruling does not show lack of diligence); Phillips, 216 F.3d at 511 (four month interval); cf. Drew v. Department of Corrections, 297 F.3d 1278, 1287-88 (11th Cir. 2002) (letter of inquiry filed sixteen months after filing of state court application does not satisfy diligence).

515 F.3d at 155.

> ### d. The time period from when Poitra became aware the North Dakota Supreme Court had ruled and the filing of his § 2254 petition

The third time frame the court considers is from when Poitra purportedly became aware that the North Dakota Supreme Court had affirmed the denial of his state petition for postconviction relief to when he filed his § 2254 petition with this court. As noted above, it is unclear whether Poitra claims this was on July 1, 2013, or sometime after. At most, the time period was 42 days, but likely was less.

In Pace, the Supreme Court concluded that a habeas petitioner who waited five months after he knew his state judgment of conviction had become final had not acted with the requisite diligence. 544 U.S. at 419. Similarly, there are lower federal court cases that have reached the same conclusion where the petitioner had let months go by without filing for federal habeas relief. Baker v. Cain, 2008 WL 3243993, at *3 (waiting four months to file federal habeas petition after becoming aware of the state court decision displayed lack of diligence); Logreira v. Secretary Dept. of Corr., 161 Fed. Appx. 902, 903-04 (11th Cir. 2006) (unpublished per curiam decision) (petitioner not entitled to equitable tolling when, among other things, he waited six months after learning of the

state court decision before filing his federal petition).

On the other hand, there is at least one court which has concluded that filing within a time frame bordering on the one that may have been involved here was sufficient diligence. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000) (filing of federal habeas petition within one month of after being denied an out-of-time state appeal requested within three days of learning of the state court decision was sufficient diligence); cf. Earl v. Fabian, 556 F.3d 717, 724 (8th Cir. 2009) (noting the Fifth Circuit's decision in Phillips); Schmitt v. Zeller, 354 Fed. Appx. 950, 952 (5th Cir. 2009) (unpublished per curiam) (stating that the wait of 50 days after learning of the denial of state relief, which included time for a contact to and response from the Texas Attorney General's Office, had no clear analogy in precedent).

Again, the court is not prepared to conclude now that the 42 days or less that Poitra took to complete and drop his petition in the prison mail system was *ipso facto* a lack of reasonable diligence.

### e.     Summary re equitable tolling

The court concludes Poitra has submitted just enough to create fact issues with respect to both of the elements that must be satisfied before he would be entitled to equitable tolling. And, because a hearing may be required, the  court will turn to the State's alternative grounds for summary judgment before going down that path.

## III.     <u>MERITS OF POITRA'S PETITION</u>

### A.     <u>Governing law</u>

### 1.     Scope of review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to

determine whether a person is being held in violation of the United States Constitution or other federal law. In most cases, this review is limited because, as a matter of federalism and comity, the primary responsibility for ensuring compliance with federal law in state criminal proceedings rests with the state courts. See, e.g., Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 787 (2011) ("Harrington").

In keeping with this policy, § 2254(d) limits federal-court review of cases where the state courts have addressed the federal claims on the merits to instances when a person is being held in custody pursuant to a state-court decision that (1) is directly contrary to established federal law as enunciated by the United States Supreme Court, (2) is an objectively unreasonable application of Supreme Court precedent, or (3) is based on an unreasonable determination of the facts based on the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d); see generally Harrington, 131 S.Ct. at 784-85; Williams v. Taylor, 529 U.S. 362, 399-413 (2000). This highly deferential standard of review under § 2254(d) is often referred to as "AEDPA deference." E.g., Pederson v. Fabian, 491 F.3d 816, 824-25 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. 766, 773 & n.1 (2010).

### 2. The State's defenses of lack of proper exhaustion and procedural default

#### a. The exhaustion requirements

The exhaustion doctrine codified at 28 U.S.C. § 2254(b)-(c) precludes granting habeas relief for claims that have not been properly exhausted in the state courts. E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). Proper exhaustion has two components. First, the claim must be "fairly presented," which requires that the petitioner present both the factual and legal premises for the claim, with the latter being satisfied if there is a reference

to the particular federal constitutional right or a citation to a state or federal case that raises the constitutional issue. Dansby v. Norris, 682 F.3d 711, 722-23 (8th Cir. 2012), vacated on other grounds sub nom., Dansby v. Hobbs, 133 S. Ct. 2767 (2013); Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007). Second, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addition, there are three other aspects of the exhaustion doctrine that are important. The first is that the exhaustion doctrine is satisfied if there are no state-court remedies available and exhaustion would be futile, such as when the claim has been procedurally defaulted at the state-court level. E.g., Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005). The second is that Rose v. Lundy, 455 U.S. 509 (1982), prohibits a petitioner from proceeding with a "mixed petition" of exhausted and unexhausted claims. See also Rhines v. Weber, 544 U.S. at 273-74. The third is that § 2254(b)(2) authorizes the court to deny a claim on the merits notwithstanding a failure to exhaust. E.g., Gingras v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008).

### b. Procedural default

A federal district court is precluded from substantively considering a habeas claim that has been procedurally defaulted at the state level on independent and adequate state grounds. E.g., Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). State procedural grounds are independent and adequate if they are firmly established, readily ascertainable, and regularly followed. Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008); Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007). They must also further a legitimate state interest and not be applied in an exorbitant manner. Barnett, 541 F.3d at 808.

The rule barring procedurally-defaulted claims is nearly absolute. <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007). The only exceptions are the rare instances when a prisoner is able to meet the strict cause and prejudice or actual innocence standards. <u>E.g.</u>, <u>Arnold v. Dormire</u>, 675 F.3d 1082, 1087 (8th Cir. 2012); <u>Dretke v. Haley</u>, 541 U.S. 386, 392-93 (2004).

Under N.D.C.C. § 29-32.1-12, res judicata and misuse of process are affirmative defenses in state proceedings for postconviction relief. Res judicata is defined in subsection (1) to be a claim that was fully and finally determined in a prior proceeding. Misuse of process is defined in subsection (2)(a) to include any "claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding[.]" These procedural defenses are regularly enforced by the North Dakota courts. <u>E.g.</u>, <u>Tweed v. State</u>, 2011 ND 228, ¶12, 807 N.W.2d 599; <u>Steen v. State</u>, 2007 ND 123, ¶¶ 13-17, 736 N.W.2d 457; <u>Laib v. State</u>, 2005 ND 187, ¶¶ 6-7, 705 N.W.2d 845.

### B.  <u>Poitra's § 2254 petition</u>

Poitra alleges four grounds in his petition for § 2254 relief. For each ground, he claims: "Ineffective Assistance of Counsel/Procedural Due Process Violation" and then gives a brief description of the claim. For purposes of the discussion that follows, the court will generously construe the petition as raising both direct claims of constitutional violation as well as Sixth Amendment claims of ineffective assistance.

Also, in both Grounds Three and Four, Poitra raises two claims. For Ground Three, the first appears to be a repeat of what was alleged in Ground One; hence, only the second claim need be addressed. As for Ground Four, the two claims will be addressed separately because they are distinct.

With these adjustments, the court will consider both direct claims of constitutional violation as well as Sixth Amendment claims of ineffective assistance with respect to the following restated "grounds:"

1.    The questioning of Poitra and obtaining a DNA sample from him without his parents or counsel being present.

2.    Law enforcement failing to disclose in the application for the warrant to obtain the DNA evidence that Poitra was a minor and allegedly conflicting evidence as to the victim's identification of Poitra.

3.    Failure of the trial court to suppress the DNA evidence because of the failure to permit Poitra to consult with his parents or counsel before it was obtained and to suppress the photograph taken of him at the time of his arrest because he was a minor.

4(a).    The court erred in excluding evidence of the victim's prior sexual conduct under Rule 412.

4(b).    The trial court failed to make any affirmative findings as to the imposition of the mandatory minimum sentence.

Finally, for the direct claims, although Poitra makes reference only to "procedural due process," he did attach to his petition a copy of his direct appeal brief. Given that and the fact Poitra is proceeding *pro se*, the court will review his direct claims in light of the constitutional right relied upon in his direct appeal, if a federal constitutional violation was claimed, *e.g.*, the Fourth Amendment prohibition against unreasonable searches and the Sixth Amendment right to counsel.

## C.     Additional background

The following from the North Dakota Supreme Court's decision denying Poitra's direct appeal provides additional relevant background:

[¶ 1] Joshua Poitra appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition and aggravated assault. Poitra contends the district court erred in denying his motion to suppress DNA evidence because he had a right to counsel before a search warrant was executed and because the affidavit for the search warrant contained false statements. Poitra also argues the court erred in denying his motion to suppress the photographic evidence and identification, the court abused its discretion by excluding evidence of the alleged victim's prior sexual history, and his sentence is illegal. We affirm.

I

[¶ 2] During the early morning hours on June 2, 2008, Jane Doe was at a Fargo residence with a group of people, including Poitra and at least two other men. At some point Doe called a taxicab to take her home. While she was outside waiting for the cab, someone grabbed her, threw her on the ground, removed her pants and underwear, and began having sexual intercourse with her. Eventually Doe was able to get away. Doe ran into the street, stopped a passing patrol vehicle from the Fargo Police Department and told the officers that she had been raped. Doe told the officers where the incident occurred, and the officers found a pair of women's underwear and a white baseball cap at the location.

[¶ 3] Fargo Police Detective James Shaw spoke to Doe on June 3, 2008, and she told him that her attacker's name was Josh or Justin, that he wore a white baseball cap with a footprint or bear claw and that he had a distinctive scar on his forehead. Shaw also talked to another individual who was with Doe on the night of the incident and she said a male named Josh was wearing a white hat with a foot emblem.

[¶ 4] On June 15, 2008, law enforcement officers were investigating an unrelated matter at the residence where the incident with Doe occurred. Poitra was at the residence and was taken into custody on a charge of minor in consumption of alcohol. Poitra was photographed when he was taken into custody. Law enforcement officers believed Poitra was eighteen, based on information from law enforcement databases and Poitra's statements.

[¶ 5] Later that day, Detectives Shaw and Paul Lies interviewed Poitra. They informed Poitra that a sexual assault had occurred on June 2, 2008, and they asked him to provide a DNA sample. Poitra told the detectives that he wanted to speak with his mother before he decided whether to give a DNA sample.

[¶ 6] On June 16, 2008, Shaw applied for a search warrant to obtain a DNA sample from Poitra. The affidavit in support of the warrant stated that the officer believed there was probable cause that Poitra was responsible in the gross sexual imposition because he "matches the general age group of the suspect, based on the fact that he was at the residence where the original incident occurred and based on the fact that he refused to voluntarily provide a DNA sample." A magistrate found probable cause existed and issued the search

warrant. Shaw subsequently met with Poitra and collected a DNA sample.

[¶ 7] Shaw also took more photographs of Poitra to use in a photographic lineup because he noticed Poitra has a distinct scar on his forehead, which was consistent with Doe's description. On June 16, 2008, Shaw conducted a photographic lineup using the photograph of Poitra taken when he was arrested for minor in consumption of alcohol. Doe positively identified Poitra as her attacker.

[¶ 8] On June 18, 2008, Poitra informed the court during a hearing that he was a juvenile. Shaw checked with the Social Security Administration to determine Poitra's correct date of birth. The Social Security Administration confirmed Poitra was a juvenile.

[¶ 9] On June 19, 2008, a petition was filed in juvenile court charging Poitra with minor in consumption of alcohol in violation of N.D.C.C. § 5-01-08, aggravated assault in violation of N.D.C.C. § 12.1-17-02 and gross sexual imposition in violation of N.D.C.C. § 12.1-20-03(1)(a). After a hearing, the juvenile court transferred the aggravated assault and gross sexual imposition charges to adult district court.

[¶ 10] Poitra moved to suppress all statements made to law enforcement because they were the result of custodial interrogation and a parent or attorney was not present, to suppress the photographic identification because the photographs were taken without a parent or attorney present and law enforcement knew or should have known he was a juvenile, and to suppress all DNA evidence because the affidavit for the warrant was based on false or misleading information. After a hearing, the court granted Poitra's motion to suppress the statements made after he was taken into custody. The court denied Poitra's motion to suppress the DNA evidence and the identification evidence obtained through photographs.

[¶ 11] After trial in July 2009, a jury found Poitra guilty of aggravated assault and gross sexual imposition. Poitra was sentenced to twenty-five years in prison with five years suspended.

State v. Poitra, 2010 ND 137, at ¶¶ 1-11.

### D.     Direct claims of constitutional violation

#### 1.     Ground One:  Questioning of Poitra and collection of DNA sample without parents and counsel  present

Poitra alleges he was placed under arrest when he was under the age of 18 and subjected to

collection of his DNA and questioning by law enforcement without counsel or his parents being

present or aware that this was being done.

With respect to the questioning, the state trial court suppressed any statements that Poitra

made following a motion to suppress and a hearing.  (Doc. No. 8, Ex. 5); see also State v. Poitra, 2010 ND 137, at ¶ 10.  Consequently, there appears to be no constitutional violation that can be claimed now with respect to the questioning.

As for the claim that he had the right to have his parents or counsel present when the DNA evidence was obtained, the State objects to consideration of that claim on the grounds that the only argument that Poitra advanced in the state courts with respect to that point was based on state law. Upon review of the state court record and the North Dakota Supreme Court's decision on direct appeal, the State's argument appears to be well-taken.

Poitra's direct appeal brief addressing the issue focused upon his argument that he had the right to the presence of his parents or counsel under the provisions of N.D.C.C. § 27-20-26 before the DNA sample was obtained.  And, while in one sentence, his brief did state that the failure to accommodate Poitra's request to speak first to his mother or counsel was a violation of his "*constitutional* and statutory rights," at no point was reference made to a *federal* constitutional provision or a state or federal case applying federal constitutional principles.  (Doc. No. 2-1, pp. 11-14).  Further, while the North Dakota Supreme Court in paragraph 25 of its opinion touched upon the question of whether Poitra had a constitutional right to have counsel present, including citing to cases from other states that have addressed directly or indirectly whether there is a federal constitutional right under the Sixth Amendment, the court appears not to have directly decided the issue.  This is because the court phrased the issue before it as whether Poitra had a statutory right pursuant to N.D.C.C. § 27-20-26 to have an attorney or counsel present and then concluded he did not.  The court's entire discussion of the issue was as follows:

[¶ 22] Poitra argues he had a statutory right to have an attorney or a parent present before the search warrant was executed.  N.D.C.C. § 27-20-26.  He contends juveniles are entitled to have a parent or attorney present at "all stages of the proceedings," which includes

when law enforcement has focused its investigation on a particular suspect. Poitra claims execution of the search warrant was a stage of the proceedings because law enforcement had focused its investigation on him.

[¶ 23] "A juvenile is recognized as a member of a special class of citizens who may require additional legal protection." In re R.P., 2008 ND 39, ¶ 13, 745 N.W.2d 642. Under the Uniform Juvenile Court Act, "[c]ounsel must be provided for a [juvenile] who . . . is not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment stages of proceedings." N.D.C.C. § 27-20-26(1).

[¶ 24] Prior versions of N.D.C.C. § 27-20-26 stated that a juvenile was entitled to counsel "at all stages of any proceedings," which this Court said included "circumstances in which an officer has focused his investigation on a particular suspect and is intent on gathering evidence, not merely investigating a complaint." In re J.D.Z., 431 N.W.2d 272, 275 (N.D. 1988). However, N.D.C.C. § 27-20-26 was amended in 1995 to its current language granting juveniles a right to counsel at "custodial, post-petition, and informal adjustment stages of proceedings." Hearing on S.B. 2264 Before the House Judiciary Comm., 54th N.D. Legis. Sess. (Jan. 25, 1995) (testimony of Gov. Ed Schafer). The change clarified when a juvenile has a right to counsel and made the statute consistent with constitutional law, limiting the right. Id. See also In re Z.C.B., 2003 ND 151, ¶ 15, 669 N.W.2d 478 (1995 amendment limited a juvenile's right to counsel under N.D.C.C. § 27-20-26).

[¶ 25] In general, a criminal defendant does not have a constitutional right to an attorney before submitting DNA during the execution of a search warrant. See, e.g., McClain v. State, 274 Ind. 250, 410 N.E.2d 1297, 1303 (1980) (no right to counsel during execution of a search warrant for internal body secretions, swab emission test does not involve attempts to get testimony or assertions and is not a critical stage of the proceedings); State v. Delisle, 137 N.H. 549, 630 A.2d 767 (1993) (a defendant does not have a right to an attorney prior to giving blood samples pursuant to a warrant); Hale v. State, 220 S.W.3d 180 (Tex. App. 2007) (no right to counsel when taking a saliva sample for DNA testing because it was not a critical stage of the proceedings). Poitra fails to cite any authority granting juveniles greater protections in executing a search warrant than an adult criminal defendant receives.

[¶ 26] Unlike cases where a juvenile must consent or refuse to take a chemical test, a juvenile does not have a choice whether to provide evidence when a search warrant has been issued. Cf. R.P., 2008 ND 39, 745 N.W.2d 642 (juvenile has a limited statutory right to consult with a parent before deciding whether to submit to chemical testing). A magistrate has already found probable cause exists for the warrant, which provides protection by review from a neutral and detached magistrate. An attorney is unlikely to advise a juvenile to refuse to submit to the search, and an attorney can do little at that time to further the juvenile's right to a fair trial. See State v. Moody, 208 Ariz. 424, 94 P.3d 1119, 1141-42 (2004) (evidence would be collected even if defendant spoke to attorney because it is unlikely an attorney would advise a defendant to defy a warrant and refuse to submit to the search); Brown v. State, 11 So.3d 866, 901 (Ala. Crim. App. 2007).

[¶ 27] Moreover, juveniles have a right to an attorney only in custodial, post-petition, and informal adjustment stages of proceedings under the Uniform Juvenile Court Act. N.D.C.C. § 27-20-26. The collection of physical evidence pursuant to a warrant

29

is not a custodial stage of the proceedings. Cf. Z.C.B., 2003 ND 151, ¶¶ 14–15, 669 N.W.2d 478 (routine traffic stops generally are not considered custodial situations and a juvenile does not have a right to have counsel or a parent present during routine questioning at an ordinary traffic stop). The warrant only allowed law enforcement to collect physical evidence. The district court suppressed all statements Poitra made to officers after he was taken into custody on the minor in consumption charge, including any made when the DNA sample was collected. The execution of the warrant was not a custodial, post-petition, or informal adjustment stage of the proceedings; and therefore, Poitra did not have a right to counsel under N.D.C.C. § 27-20-26.

[¶ 28] We conclude Poitra did not have a right to have an attorney present before the execution of the search warrant. The district court did not err in denying his motion to suppress the DNA evidence.

State v. Poitra, 2010 ND 137, at ¶¶ 22-28.

Consequently, it does appear that Poitra failed to properly exhaust any direct federal constitutional claim that he is attempting to bring now and, more importantly, that he has procedurally defaulted upon the claim. As discussed earlier, the state statutory bar against misuse of process would prevent him from being able to have the claim heard by the state court on the merits if he returned to state court, which renders his claim unreviewable here under the authority previously cited.

But, even if the court is wrong and Poitra had raised a claim of federal constitutional violation on direct appeal, Poitra has failed to cite to any authority holding that a juvenile has a constitutional right to have parents or counsel present during a search for DNA evidence when it is pursuant to a warrant. And, as indicated by the authority cited by the North Dakota Supreme Court, it appears there is no such right.

## 2. Ground Two: Law enforcement failing to disclose in the application for the warrant to obtain the DNA evidence that Poitra was a minor and allegedly conflicting evidence as to the victim's identification of Poitra

Essentially, the claim that Poitra is attempting to assert here is that the affidavit in support of the warrant to obtain his DNA evidence violated his rights under the Fourth Amendment because

it recklessly omitted information material to the determination of probable cause.  The State objects to the consideration of this claim, arguing it is barred under the doctrine established by <u>Stone v. Powell</u>, which held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976) (footnote omitted).

The State's objection is well-taken.  <u>E.g.</u>, <u>Matthews v. Workman</u>, 577 F.3d 1175, 1194 (10th Cir. 2009) (concluding that <u>Stone v. Powell</u> precluded consideration of habeas claim that an affidavit in support of search warrant was obtained with false statements and intentional material omissions in violation of the Fourth Amendment under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) ("<u>Franks</u>"), since the habeas petitioner was afforded a full and fair opportunity to litigate the claim before the state courts); <u>Moreno v. Dretke</u>, 450 F.3d 158, 167 (5th Cir. 2006) (same).

In this case, Poitra filed a motion with the state district court to suppress the DNA evidence which included a <u>Franks</u> claim that the affidavit in support of the warrant recklessly omitted information material to the determination of probable cause.  (Doc. No. 8, Ex. 7).  The district court held a <u>Franks</u> hearing and denied the motion to suppress as to this point.  In so doing, the trial court expressly acknowledged the procedure laid out in <u>Franks</u> for assessing probable cause when a claim is made that the warrant was lacking in probable cause because material information had been recklessly omitted.  (Doc. No. 8, Exs. 8 & 9).  Then after Poitra was convicted, he availed himself of the opportunity of appealing the denial of the motion to suppress to the North Dakota Supreme Court, which also rejected his <u>Franks</u> challenge.  (Doc. No. 2-1, pp. 6-11); <u>State v. Poitra</u>, 2010 ND 137, at ¶¶ 22-28.

In short, the state court record indicates that Poitra was given a full and fair opportunity to litigate his Fourth Amendment objections before the state courts, and Poitra has failed to demonstrate otherwise. Moreno, 450 F.3d at 167. The mere fact that the state courts may have gotten the issue wrong (which does not appear to be the case) is not enough now to entitle him to habeas relief. See, e.g., Matthews, 577 F.3d at 1194; Moreno, 450 F.3d at 167. Poitra's only avenue for federal review to determine whether or not his Fourth Amendment claim had been correctly decided would have been a petition for certiorari to the United States Supreme Court from the North Dakota Supreme Court's denial of his Fourth Amendment claim on direct appeal, which Poitra did not bring.

### 3. The remaining direct claims

The State objects to consideration of the remaining claims in Grounds Three and Four because the only arguments advanced to the state courts in support of the claims were based on state law. Again, the State's objection is well-taken.

In Ground Three, Poitra claims that his rights were violated because of the failure to suppress his identification from a photo display because the photograph that was used was improperly obtained given his juvenile status. The only argument that Poitra presented on direct appeal on this issue, and the only argument the North Dakota Supreme Court addressed, was based on state law, i.e., N.D.C.C. § 27-20-53(6). (Doc. No. 2-1, pp. 14-15); State v. Poitra, 2010 ND 137, at ¶¶ 29-32.

In Ground Four, Poitra asserted two distinct claims. The first was that the trial court erred in excluding evidence of an alleged sexual encounter that the victim purportedly had with another individual earlier on the night in question. The only claim that Poitra asserted for this argument was based on an alleged violation of N.D. R. Evid. 412. (Doc. No. 2-1, p. 17). And, likewise, that was

the only ground considered by the North Dakota Supreme Court in rejecting the claim on direct appeal. State v. Poitra, 2010 ND 137, at ¶¶ 33-38.

Finally, in the second claim in Ground Four, Poitra asserts that the trial court failed to make any affirmative findings as to the imposition of the mandatory minimum sentence. Again, the only argument that Poitra presented to the state courts was a violation of state law, and that was the only argument that the the North Dakota Supreme Court relied upon in denying the claim. (Doc. No. 2-1, p. 15-17) State v. Poitra, 2010 ND 137, at ¶¶ 39-43.

Consequently, the remainder of Poitra's direct claims cannot be considered here for the same reason articulated above with respect to Ground One, *i.e.*, they were not properly exhausted and have now been procedurally defaulted.

### E.  Ineffective assistance claims

As noted earlier, Poitra alleges ineffective assistance of counsel with respect to each of the four grounds alleged in his petition. The State objects to these claims on two grounds. The first is the lack of any explanation for why counsel was purportedly ineffective. In fact, the claims do not identify with particularity which counsel Poitra is talking about. The second is the lack of exhaustion and procedural default.

The court need not address the first objection because the second clearly has merit. In this case, the only claims of ineffective assistance of counsel that Poitra asserted in his appeal to the North Dakota Supreme Court from the state district's court denial of his petition for postconviction relief were: (1) his trial counsel was ineffective by failing to consult with an eyewitness expert; (2) his trial counsel was ineffective by not making necessary efforts to secure the presence of defense witnesses; (3) his trial counsel was ineffective by not advising Poitra of the possibility that taking

responsibility for his crime could be used to mitigate his sentence; and (4) his appellate counsel was ineffective by not advising Poitra of his right to a post-appeal Rule 35 motion in which he could have taken responsibility for his crime and asked that the minimum mandatory sentence not be applied. (Doc. No. 8, Ex. 26).

Notably, none of these four grounds are the ones Poitra may be attempting to assert here. As noted earlier, to properly exhaust a claim, Poitra must have pursued it through one complete round of whatever appellate process the state offers. Clearly, he failed to do this with respect to any claim of ineffective assistance that he has now asserted in his § 2254 petition. Further, and more importantly now, it is too late for Poitra to return to state court to litigate these claims for the reasons already discussed. Consequently, all of Poitra's ineffective-assistance claims are subject to dismissal based on procedural default.

## IV.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. When the court denies a petitioner's claim on procedural grounds without reaching the merits, the petitioner must demonstrate that reasonable jurists would find it debatable that a valid claim for the denial of constitutional rights has been stated and that reasonable jurists would find it debatable that the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, reasonable jurists would not find debatable the dispositions of the claims as set forth above, whether on the merits or on procedural grounds. Consequently, a certificate of appealability will not be issued.

## V.    CONCLUSION AND ORDER

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The State's motion to dismiss (Doc. No. 10) is **GRANTED**, Poitra's § 2254 petition

(Doc. No. 2) **DENIED**, and this action is **DISMISSED WITH PREJUDICE**; and

2.    A certificate of appealability is not issued.

**IT IS SO ORDERED.**

Dated this 7th day of January, 2015.

> */s/  Charles S. Miller, Jr.*
> Charles S. Miller, Jr., Magistrate Judge
> United States District Court